## JOGGER MFG. CORPORATION v. ROQUEMORE.

### No. 7274.

Circuit Court of Appeals, Seventh Circuit.
March 6, 1941.

Rehearing Denied April 14, 1941.

Philip M. Aitken, of Lincoln, Neb., and J. Rex Allen, of Chicago, Ill., for appellant.

Thorley von Holst, of Chicago, Ill., for appellee.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

Defendant denied infringement of plaintiff's two patents, Nos. 1,694,638 and 1,863,465, which cover a jogger, which is a device attached to a multigraph or a print-

ing press and which stacks the papers coming through in even piles. Mechanical joggers have been used in connection with printing machines for many years, and one patent set out in the record goes back to 1879. When these patents were issued, plaintiff was engaged in the manufacture of joggers for its customers, among whom was American Multigraph Company, whose successor was Addressograph Multigraph Corporation. Both are hereinafter referred to as M Company.

Plaintiff sold its business to M Company, and executed an exclusive license, for the life of the patents, to make two types of joggers. M Company sold joggers with its machines. One was sold to defendant, who contends that this jogger which it later sold was within the scope of the license from plaintiff to M Company.

The defense of infringement is double-barreled. It is argued: (a) The M Co. was licensed by plaintiff to make the machine such as was sold. If so there was obviously no infringement. (b) The machine sold did not, in fact, infringe either patent.

There was an additional defense, partial or complete,—plaintiff's laches.

The court found against defendant on both infringement contentions, and entered the usual decree of accounting and injunction.

The first argument on infringement turns on the scope of the language in the license contract of August 10, 1931:

"To make, use, and sell joggers known as Models 112 and 1121 and embodying the invention of said patent or any reissue thereof."

What was meant by the words "Models 112 and 1121"?

The aforesaid agreement was executed after negotiations wherein plaintiff sought to sell its business to M Company, which was built around the two patents.

In addition to granting an exclusive license for the life of the patent, plaintiff sold

"its drawings * * * parts, castings, jigs, tools and dies now existing and either used or usable in the manufacture of Models 112 and 1121 joggers."

Plaintiff seeks to hold M Company and its customers to joggers whose size corresponds exactly with Models 112 and 1121, whereas M Company contends that joggers were of two classes, one for use in the office equipment field and the other for the commercial printing field. Its license covered the first named field (the office equipment) with two exceptions provided in the last clause of paragraph one. M Company was engaged in the office equipment field only, and it had ordered joggers from the plaintiff for its multigraphs, to which the joggers were attached. It sold two multigraphs principally, Nos. 66 and 86, and joggers 112 and 1121 were the proper size and width to be attached to these machines. M Company also made a third multigraph model known by it as 57, but its sales were so small that the joggers which plaintiff made for it had not yet been given a number.

Plaintiff's argument of infringement is based on difference in sizes only. All the joggers are the same, but the dimensions differ. The one sold by defendant differed from jogger models 112 and 1121. It was made by M Company for a different multigraph.

Three paragraphs of the agreement are herewith set forth:

"Whereas, Multigraph is desirous of obtaining a license to manufacture certain devices or joggers known as Models No. 112 and 1121, and covered by the aforesaid patent and application for Letters Patent, to be applied to their products as from time to time manufactured.

"Whereas, The said jogger is desirous of licensing the said Multigraph to manufacture, use and sell *two types of joggers* known as Models No. 112 and 1121 for attachment to the products from time to time manufactured and sold by Multigraph; and

\* \* \* \* \* \*

"1. Jogger hereby grants unto Multigraph the exclusive license to make, use and sell joggers known as models 112 and 1121 *and embodying the invention of this patent or any re-issue thereof,* and of any patent that may be issued on said application or any division, renewal or reissue thereof, and of any patents that may hereafter be owned by Jogger on any improvements thereof, or substitutions therefor, throughout the United States and foreign countries, and to the full end of the term of each of said patents, *provided, however, that Multigraph shall have no right to manufacture said Joggers for M-24 and Multicolor type presses."*

M Company emphasizes the language "to be applied to their products as from time to time manufactured."

Still more significant is the last clause of paragraph 1,

"provided, however, that Multigraph shall have no right to manufacture said Joggers for M-24 and Multicolor type presses."

■ We feel justified in finding (from a reading of the entire contract), as well as from the purpose and object of the agreement, that plaintiff was selling its business and granting an exclusive license to the defendant to make and sell joggers known as Models 112 and 1121, to be used by M Company "to be applied to their products as from time to time manufactured." In other words, M Company was not restricted to its so-called models 66 and 86, but, as and when the trade demanded different sizes, it could and would produce such multigraphs, and it was licensed by plaintiff to make, use, and sell models to be attached to such multigraphs in the office equipment field. It is significant that instead of specific joggers, the license to make which was granted, the parties used the terms "models," "types," and "known as models."

Most significant is the fact that after granting to M Company the exclusive license to make joggers in paragraph 1, it excepted therefrom, in the same paragraph, "joggers for M-24 and Multicolor type presses." If M Company were restricted to a jogger of the exact sizes and dimensions of 112 and 1121, why except joggers which were not identical therewith? Yet joggers for M-24 and Multicolor type presses were excepted. If said grant were limited to the exact structures of 112 and 1121, the parties would not except two other known makes, neither of which was of the dimensions of 112 or 1121. Then, too, it approaches the absurd to assume the parties restricted M Company to machines of the exact dimensions it used as attachments to its multigraph models 66 and 86, when, at the time, M Company had an additional model 57 and was preparing for the trade two or three other models which were not of the same dimensions and which were by it later numbered 206, 296, and 300.

These different models called for different sized attachments. The frame in which the jogger was situated, which was the distinctive type of multigraph 66 and 86 for joggers 112 and 1121, was unpatented and unpatentable. The jogger operated the same in all models, but the attachment looked better and probably spaced better when its dimensions were like those of the multigraph.

There is a fatal inconsistency between the provision which followed the word "provided" and a construction of the contract which limited M Company to joggers of the exact dimensions of 112 and 1121. In other words, joggers for M-24 could not be used with the specific joggers known as 112 and 1121. Therefore, there could be no possible explanation for excepting "joggers for M-24," if it were not intended that M Company might make joggers of the kind *like 112 and 1121,* but differing in size from them. Strongly supporting this view is the action of plaintiff. M Company began making different sized frames for its joggers immediately after the sale and license contract was executed. This was in 1931. It continued to make and sell these various models (different sizes) with plaintiff's knowledge. Not until 1939 did plaintiff bring this suit.

Other strong and persuasive reasons, there are, for supporting the conclusion that the jogger in question was within the protection of the license grant to M Company, but we feel they need not be set forth.

■ We are not satisfied that infringement of Claim 2 of Patent No. 1,694,638 is established.

Claim 2, with each element separately stated, reads:

"(1) a frame,

"(2) movable bars supported by the frame,

"(3) plates carried by said bars, having angularly disposed slots therein, .

"(4) brackets on the frame,

"(5) longitudinal plates supported by the brackets each having down-turned apertured ends

"(6) jogger plates, having arms passed through the apertured ends,

"(7) blocks carried by the arms,

"(8) and rollers carried by the blocks and movable in the slots."

■ Defendant contends that it has neither element 4 nor 5. We think it is clear that it does not have element 5. The plaintiff states that said element "is functionally present." This is not sufficient. The combination may produce the same results, yet by a different element. The test

of infringement of a product patent is presence of each element or its equivalent. It is clear that "longitudinal plates supported by the brackets, each having turned down apertured ends" is not met by, and plaintiff's president concedes it was not met by, the accused structure which had but one turned down apertured end.

Defendant's structure did not have a bracket attached to the frame nor was its frame attached to the bracket. It did not have downward turned apertured ends.

It is fairly inferable from the prior art that plaintiff was required to narrow its claim and limit it to the disclosed and described invention which included elements 4 and 5. This made it easier for an infringer to avoid infringement, but without its insertion plaintiff was confronted by a charge of invalidity.

Claim 2 of Patent No. 1,694,638 was not infringed by defendant's accused jogger.

The asserted infringement of the second patent, No. 1,863,465, is met by the same objection and the same argument. The claims are extremely narrow and in the nature of improvement claims. One is herewith set forth:

"1. The combination with a sheet stacking apparatus having a stack-supporting table and jogging means for successively aligning the edges of sheets being stacked, of a table lowering mechanism comprising a rotatable shaft operatively connected to and for vertically moving said table, manual means for directly engaging said shaft, a second rotatable shaft geared to said first mentioned shaft, means for automatically disengaging said first and second shafts upon rotation of said manual means in one direction, a pivotally mounted actuating arm, a pawl mounted thereupon, a ratchet wheel fixedly mounted on said second shaft, a shroud adjustable on said ratchet wheel to predetermine the number of teeth thereof which are engageable by said pawl, and a reciprocating arm for direct connection with said actuating arm and said jogging means."

In it there are eleven elements, and each is specific and detailed. The defendant says it uses a cam instead of a shroud; that its cam is adjustable on a shaft and not on the ratchet wheel. Counsel for appellant asserts another difference which we have been unable to refute. We therefore must accept it. It is this:

"There is in the accused structure no such reciprocating arm directly connecting the jogger means and the pawl actuating arm * * * but, on the contrary, the reciprocating arm, which in defendant's device actuates the jogger means, is quite far removed from the means that operates the pawl actuating arm and is actuated by something else, the shaft 4 and arm 4a. Even though they may owe their movement to the same means, one part of the device directly actuates the jogger means, and a separate and distinct means, separated quite a distance laterally from the jogger actuating means, actuates the pawl actuating arm."

Without going into the details of each claim we content ourselves with saying that plaintiff's patent is extremely narrow and its infringement is not shown.[1] Plaintiff's counsel has rather adroitly interchanged the functions and the elements of the accused devise, thereby creating some confusion as to their equivalency. Functions may well be investigated and examined to ascertain the range of mechanical equivalents. But there is no basis for asserting infringement because of similarity of functions. There must be similarity of elements which perform the desired functions before infringement is shown. We find there was no infringement of the second patent.

The decree is reversed with costs, with directions to dismiss the complaint.

---

[1] This opinion is written for the parties and their attorneys. Others seeking a complete copy of the two patents, the patents of the prior art, the drawings and the testimony, may find them in the office of the Clerk.