NORRIS INDUSTRIES, INC., Plaintiff,

v.

BEST UNIVERSAL LOCK CO., Inc., a corporation of Indiana, and Best Lock Corporation, a corporation of Delaware, Defendants.

No. IP 66–C–239.

United States District Court
S. D. Indiana,
Indianapolis Division.

July 3, 1968.

Vernon D. Beehler and Beehler & Arant, Los Angeles, Cal., and Harold R. Woodard, Indianapolis, Ind. for plaintiff.

Willis K. Kunz, of Kunz & Kunz, Indianapolis, Ind., and Albert Robin and Watson, Leavenworth, Kelton & Taggart, New York City, New York, for defendants.

## MEMORANDUM OPINION

NOLAND, District Judge.

This is an action for infringement. Plaintiffs complain that a certain stainless steel lockset manufactured and sold

by defendants infringes United States Letters Patent No. 3,048,996, entitled "Rose Blocking Knob", and United States Letters Patent No. 3,190,091, entitled "Removable Cylinder Spindle Retaining Shoulder." Patent No. 3,048,996 was issued on August 14, 1962, to the plaintiff Fred J. Russell and George B. Solovieff. (Solovieff is assignor to Russell). The patent is referred to as "996". United States Letters Patent No. 3,190,091 was issued on June 22, 1965, to Fred J. Russell and George B. Solovieff. (Solovieff is assignor to Russell). The patent is referred to as "091".

Defendants deny infringement and validity of the patents, and by counterclaim seek a declaration that the patents are invalid.

This court has jurisdiction of the parties and subject matter of this action under 35 U.S.C. § 281, and 28 U.S.C. § 1338(a), 2201 and 2202.

This case was tried before the court on November 7th through the 10th, 1967, and has been briefed and argued. This Memorandum Opinion contains the Findings of Fact and Conclusions of Law in accordance with Rule 52(a), Federal Rules of Civil Procedure.

At the time this action for infringement was filed, Fred J. Russell, a resident of Beverly Hills, California, was the owner of Patents "996" and "091" and was the owner of the common stock of Weiser Company and its subsidiaries. During the pendency of this action and before trial, Fred J. Russell sold all of his interest in Weiser Company and the Patents "996" and "091" to the plaintiff Norris Industries, Inc., of California, and Norris was joined as party plaintiff on November 2, 1967. Weiser Company was a manufacturer of hardware, including locks, and was licensee of the patents in suit. Fred J. Russell has been in the lock business since approximately 1943 and has been an officer and owner of various interrelated companies which have carried or used the Weiser name.

Defendant Best Lock Corporation is a Delaware corporation with its principal place of business in Indianapolis, Indiana. The defendant Best Universal Lock Co. Inc., an Indiana corporation, is a wholly-owned subsidiary of Best Lock Corporation and does the manufacturing and selling for Best Lock Corporation through an agency relationship. Defendants are referred to hereinafter collectively as "Best".

In about 1925 Frank E. Best, founder of the Best companies, originated and caused to be manufactured a key-operated mechanism similar to the key-operated mechanism described in plaintiff's Removable Cylinder Spindle Retaining Shoulder as "Character 30". Best has continued to manufacture and sell the key-operated mechanism to date, and by keeping the distance from the face and the outer end of the control lug the same, Best has maintained interchangeability.

Best's key-operated mechanism differs from the regular pin tumbler cylinders in that the regular pin tumbler cylinders consist of a cylindrical key plug in a cylindrical housing upon which a pin tumbler housing, usually rectangular in shape, is mounted. When the operating key is inserted in the keyway, the pins in the pin housing are lifted to coincide with the shear line between the key plug and the key plug housing so that the rotation of the key rotates the key plug and any mechanism attached to the inner end of the key plug for locking or unlocking the latch bolt. The Best key-operated mechanism is a pin tumbler cylinder which has a figure 8 configuration for which Best coined the name "core". The lower lobe of the figure 8 contained the key plug and the upper lobe contained the pin tumbler housing. In the Best key-operated mechanism, when the operating key is inserted in the keyway, the pins are lifted as in the case of the regular or typical pin tumbler system to coincide with the shear line between the outside surface of the key plug and the bottom of a control lug. However, when the control key is inserted, the pins are lifted to coin-

cide with a different shear line at the top of the control lug permitting a limited rotation of the control lug extending it from or retracting it into the figure 8 outline of the core and thus permitting key-actuated removal of the core from the housing.

## ACCUSED DEVICE

The accused device is identified by plaintiffs as a stainless steel lockset manufactured by Best. The evidence was limited to Model 6K7A9.

The Best 6K lockset is a tubular lockset constructed of stainless steel with hollow or wrought knobs. The outer and inner knobs are rotatably mounted in their respective rose or escutcheon assemblies. The outer rose assembly has a base or stud plate from which studs extend to fixedly mount it through the door to the base plate of the inner rose assembly. The outer knob assembly houses the Best figure 8 core which is supported by an opening of identical configuration in the face plate of the knob assembly. The keyway of this core accommodates both a control key which serves to remove the core from the knob by retracting a control lug into the core configuration and an operator key which serves to rotate a tail piece inserted in the key plug of the core. The inner knob houses a turn button. A square spindle is fixedly retained in the inner knob rose assembly, through a square opening in the latch bolt assembly, (so that when the spindle is turned, the latch bolt is retracted), through an opening in the outer knob rose assembly and into the bore of the outer knob assembly through an opening in the knob end plate.

The outer knob of the 6K7A9 is a multiple piece assembly consisting of a hollow knob shell, a face plate, an end plate, and a sleeve (termed part of the spindle by plaintiffs). The face plate, which has an opening identical in configuration to the Best core, is press fitted to the end of the knob. The end plate of the knob has four slots which

receive tabs of the knob sleeve, this knob sleeve being fixedly mounted to the knob assembly by crimping the tabs.

The Best core is mounted in the face plate with its inner end extending into the sleeve, the outer end of the sleeve being so shaped as to engage the control lug of the core to prevent removal of the core except when the control lug is retracted into the core by the control key. A tail piece attached to the core rests in a C-shaped opening in a plate attached to the outer end of the spindle so that when the operator key is turned, the tail piece rotates the spindle through a lost motion connection.

A rectangular shaped lock-bar slides in a slot in the outer sleeve (termed part of the spindle by plaintiffs). In the unlocked position its nose extends into but not beyond a rectangular cutout in the outer knob end plate. The bottom surface of the lock-bar fits in a slot on the spindle plate attached to the outer end of the spindle.

When the lock is in its unlocked position, the lock-bar, fitting in a slot of the spindle plate, connects the outer knob and the spindle by reason of the protrusion of its nose in the slot of the knob end plate. In this unlocked position the rotation of the outer knob rotates the knob end plate and rotation is transmitted through the lock-bar to the spindle plate and to the spindle, rotating the spindle and retracting the latch bolt. Since the inner knob is always nonrotatably connected to the spindle, rotation of the inner knob will also rotate the spindle retracting the latch bolt.

To lock the door from the inside the turn button on the inner knob is rotated 90° clockwise. A stem attached to the turn button transmits torque to a camming means attached to the outer end of the spindle and clockwise rotation of the turn button results in axial movement of the lock-bar through the slot in the knob end plate, through the open space between the end plate and the sleeve and into a slot in the stud plate of the fixed rose assembly. The lock-

bar thus engages both the knob and rose assembly to prevent the outer knob from being rotated. In this locked position, however, a cutout in the bottom surface of the lock-bar aligns into the slot of the spindle plate so that the spindle may rotate relative to the lock-bar. Thus, in the locked position, rotation of the operator key or of the inner knob will cause the spindle to rotate and the latch bolt to be retracted.

## PATENT NO. 3,190,091

Patent "091" related to the retention of a Best type removable core in the tubular spindle of a cylindrical lockset by a retaining shoulder on the spindle. The patent was issued on June 22, 1965, on application filed May 27, 1963. No evidence was offered to show the date of the conception or the date of reduction of practice prior to the date of May 27, 1963.

The "091" patent discloses a hollow or wrought knob with a slotted tubular spindle housing a Best type figure 8 core through the face of the knob with the lower lobe of the core, containing the keyway, housed in the spindle and the upper portion, containing the tumbler system, extending through a slot in the spindle wall and with the control lug of the core engaged against a retaining shoulder in the slotted portion of the spindle.

The plaintiff Mr. Fred J. Russell, in explaining the facts leading up to the development of the "091" patent, pointed out that Best was making the interchangeable core available to all brands of key-in-the-knob or cylindrical bore-in type locks and that when plaintiffs made the particular key-in-the-knob lock line (Series X) and anticipated that someone buying this lock would want to put the Best core in it, they concluded that it would be an improvement to provide a retaining shoulder for the cam of the Best core to register against by making a cutout in the slot in the spindle that would create the shoulder. The plaintiff Russell demonstrated at trial the interchangeability of the plaintiffs' figure 8 core with the Best core and acknowledged that he had the Best core before him at the time of preparing Patent "091".

Mr. Russell also conceded that the hollow or wrought knob, the tubular spindle, and the mounting of a core or cylinder in a hollow spindle was old in the art. Plaintiff also conceded that the camming means of the Best type core, operated by a control key and not the operating key wherein a portion of the operating mechanism is extended for locking behind a retaining shoulder, was old in the art and in fact had been practiced by Best for many years. In fact, the plaintiff, Mr. Russell, volunteered in respect to Patent "091" that the only thing we were talking about was the shoulder in a spindle to retain this (the Best type) interchangeable core. He said that that was all that Patent "091" treats with.

Defendants offered some six prior art patents not referenced in the patent or in the file history.[1]

One of these prior art patents, Patent No. 2,007,350, issued to Walter Schlage on July 8, 1935, and entitled, "Dismountable Cylinder Knob", shows the art of removably mounting a core containing the keyway and pin tumbler system in the bore of a tubular spindle of a cylindrical bore-in type lock with the pin tumbler housing, rectangular in shape rather than circular as in the case of Best, through a slot in the spin-

[1.]

| Patent No. | Patentee | Date |
|---|---|---|
| 2,007,350 | Schlage | July 9, 1935 |
| 1,575,092 | Best | March 2, 1926 |
| 2,294,213 | Schlage | Aug. 25, 1942 |
| 2,677,953 | Fisler | May 11, 1954 |
| 3,077,100 | Gerlach | Feb. 12, 1963 |
| 2,694,919 | Fisler | Nov. 23, 1954 |

dle wall. Removal of this core from the spindle is prevented by rotation of the key plug so that the notches on the key plug engage behind dogs or shoulders on the cylindrical spindle. The Glass prior art patent, No. 2,825,220, issued March 4, 1958, shows a tubular sleeve connected to a hollow knob and provides a slot which accommodates the core containing the keyway and pin tumbler system.

Plaintiff offered no probative evidence of the sale of locks practicing the "091" patent. Although the plaintiff Russell testified to sales of Series X locks for year ending July 31, 1967, of $989,807.58, and that the Series X lock was one of a series of locks available with provision to receive the interchangeable core which is replaced or removed by the aid of a control key, plaintiff did not establish any sales of Series X locks that did in fact practice the invention. The Series X lock introduced by plaintiffs as practicing the invention did not effectively retain the interchangeable core, and the plaintiff Russell admitted that the spindle cap had been lengthened from that shown in the patent so that the camming lug of the interchangeable core retained in the core rather than the shoulder on the spindle called for by the "091" patent. The other Series X locks introduced by the defendants showed the removal in the main of the retaining shoulder and the locking of the interchangeable core behind the elongated spindle cap.

Evidence established that defendants sold a system of locks adapted to locks of other manufacturers, that there were thousands of such adaptions, and that the defendants in fact adapted its removable core to approximately 60 to 100 knobs of cylindrical type locks. These adaptions were often small in number and were done by a machining process.

In the mid 50's, Best engaged in designing and adapting locksets of others to accommodate the Best core, including wrought knob locksets. Many of the drawings and models positioned the retaining shoulder for the locking of the core in a slot in a tubular member similar to the spindle or cam sleeve of a cylindrical lockset.

In '61 Best adapted the Challenger stainless steel lockset so that its wrought knob would accommodate the Best core. This was accomplished by drilling a figure 8 opening in the knob and adding a tubular core retainer with retaining shoulder as proposed in the plaintiffs' "091" patent to the cylindrical spindle or cam sleeve. The core retainer also joined to the spindle in such a manner that rotation of one would rotate the other. The working model of the Challenger stainless steel lockset so adapted was made in August 1961 and order received therefor in April 1962, and the order filled in December 1962.

## PATENT NO. 3,048,996

Patent "996" related to conventional type door locks and a means for locking the knob to the fixed rose assembly by the use of a lock-bar. Patent "996" was issued on August 14, 1962, on application filed September 19, 1960. No evidence was offered to show the date of the conception or date of reduction to practice prior to the date of September 19, 1960.

The three claims of the "996" patent filed in the Patent Office were granted with only minimal amendments. The elements of these claims relating to a door lock device are:

1. A mounting rose assembly secured upon a door in a relative stationary position having a bearing aperture therethrough, an annular recess therein, and a locking slot extending axially from said annular recess.

2. An operating assembly including a mounting portion rotatably mounted in said aperture, and an axially extending passage.

3. A spindle having a non-rotatable connection with the operating assembly.

4. A lock-bar having a non-rotatable axially movable mounting on the spindle and being located in the axially extending passage of the operating assembly.

5. Means for moving the lock-bar in a position where a portion extends into the annular recess (permitting rotation of said operating assembly relative to the rose) and for moving the lock-bar in a position where a portion extends into a lock slot (connecting said operating assembly in non-rotatable engagement with the rose).

Claim 2 provides in addition for a lock-bar having a non-rotatable and axially movable mounting on the spindle and a means for moving the lock-bar, including a cam.

Claim 3 provides in addition to Claim 1 for the cam in Claim 2 which moves the lock-bar in one direction and enables the lock-bar to move in another direction.

In the embodiment of the patent the spindle is square and the point is made that the square aperture in the lock-bar "contains the spindle non-rotatably with respect to the lock-bar".

The specification of the patent further points out that of special consequence in the structure and operation of the invention is the provision for an annular recess, hence the specifications say that even though the lock-bar is non-rotatably secured to the spindle and is also non-rotatably connected to the shank, the shank and knob will rotate freely because of the freedom of rotation of the lock-bar in the annular recess.

Defendants offered five prior art patents which were not considered by the examiner.[2] One of these prior art patents was the patent issued to E. Ellingson on April 22, 1930, entitled "Doorknob Locking Device". The defendants'

expert, Dr. Schultz, testified that the Ellingson patent contained all of the claims of plaintiffs' "996" patent except for an annular recess and suggested that the prior art patents made the provision for an annular recess obvious.

Plaintiffs, on the other hand, seek to distinguish this prior art patent on the grounds that it did not have an annular recess or a lock slot extending axially from an annular recess.

While plaintiffs testified that one or two drawings of the "996" patent show a portion of the spindle rounded to permit rotation of the spindle relative to the lock-bar, the specifications indicate an embodiment with the square aperture in the lock-bar, and the claims specifically state that the lock-bar has a non-rotatable and axially movable mounting on said spindle. The claims are so limited in scope.

## VALIDITY

The issues in this case, stated generally, are whether the three claims of the "091" patent and the three claims of the "996" patent are infringed by the defendants' manufacture and sale of the 6K stainless steel lockset. Plaintiffs assert that all of the claims of both patents are infringed by the 6K lockset and that all claims read directly on the accused device. Although plaintiffs in their briefs set out general law on the doctrine of equivalence, no suggestion was made at trial that any elements of the claims were not present in the defendants' 6K lockset.

■ Under the Patent Laws of the United States, whoever invents or discovers any new or useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent sub-

| 2. | Patent No. | Patentee | Date |
|---|---|---|---|
| | 1,755,434 | Ellingson | April 22, 1930 |
| | 2,226,499 | Ledin | Dec. 24, 1940 |
| | 2,645,927 | McConnell | July 21, 1953 |
| | 2,713,257 | McConnell | July 19, 1955 |
| | 2,825,220 | Glass | March 4, 1958 |

ject to certain conditions and requirements.[3]

The conditions or requirements raised by defendants to establish invalidity are:

1. The invention was known or used by others in this country.[4] (Evidence introduced to support this contention related to the adaption of a Challenger stainless steel lockset to accommodate a Best core and was confined to the "091" patent.)

2. Subject matter of the patents was obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains.[5]

■ This requirement of non-obviousness, although long existing under the common laws, was added by statute to the Patent Law in 1952. As stated by the Supreme Court in Graham v. John Deere Co., 383 U.S. 1, at page 17, 86 S.Ct. 684, 15 L.Ed.2d 545, that while the ultimate question of patent validity is one of law, the (Sec. 103) condition which is but one of three conditions, each of which must be satisfied, lends itself to several basic inquiries; namely, the scope and content of the prior art are to be determined, differences between the prior art and the claims at issue are to be ascertained and the level of ordinary skill in the pertinent art to be resolved. Against this background the obviousness or non-obviousness is determined.

The Court further stated that such secondary conditions as commercial success, long-felt but non-solved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matters sought to be patented.

■ An inventor is charged with knowledge of all that the prior art, taken as a whole, discloses with respect to the subject matter of the invention, and a person skilled in the art is further presumed to have had at his disposal all relevant prior art constructions and patents. Application of Winslow, 365 F.2d 1017, 53 CCPA 1574 (1966); Hazeltine Research, Inc. v. Brenner, 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed.2d 304.

■ A patent is presumed to be valid and the burden establishing invalidity rests upon the party asserting it. 35 U.S.C. § 282.

■ It has been held, however, that the presumption of validity of a patent *does not exist as against evidence of prior art not before the Patent Office.* Hobbs v. Wisconsin Power & Light Company, 250 F.2d 100 (7th Cir. 1957)

The "091" patent contains three claims, each comprising a key-operated mechanism of the Best type responsive to either an operating or control key, which mechanism is held in place in the bore of a cylindrical spindle of a tubular bore-in type lock through extension of a camming means by rotation of the control key into engagement with the retaining shoulder in the spindle wall.

Defendants make a compelling case against the validity of the "091" patent. First, by showing pertinent prior art patents not referenced by the examiner which establish the practice in a cylindrical bore-in type lockset of position-

---

3. 35 U.S.C. § 101.

4. 35 U.S.C. § 102(a).
   A person shall be entitled to a patent unless—(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent.

5. 35 U.S.C. § 103.
   A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

ing the core containing the key plug and tumbler system in the spindle or cam sleeve, and in fact locking the same by a camming means against a retaining shoulder in the spindle or knob sleeve. This, by plaintiff Russell's own admission, is the invention sought to be patented in the "091" patent. Plaintiffs seek to distinguish these prior art patents both in the prosecution of the patent and at trial by the fact that the core was not key removable from the face of the knob. This, however, the record indicates has been done by Best since about 1925 and is not new in the art and is not sufficient to avoid the prior art. Secondly, by showing extensive use by Best of locking the Best core in a cylindrical or hollow spindle type part in reference to the date of the invention established as May 27, 1963. Although many of these practices related to experimental items not marketed, Best established the adaption of its Challenger 7K lockset and other Challenger models to its core; and, more important, defendants established that in adapting its system of locks to the locking hardware of others it adapted a Challenger stainless steel lockset in such manner that the hollow wrought knob would accommodate the Best core. It accomplished this by drilling a figure 8 opening in the knob and adding a tubular core retainer with a shoulder, the same as that in the "091" patent, to the Challenger spindle. The evidence established that this adaption was made to approximately fifteen locksets for a Naval Armory in Alaska more than a year prior to the May 27, 1963, date. This adaption, although on a very small number of locks and by a machining process, would seem to be identical to the adaption that the plaintiff Russell testified to in adapting his Series X lockset to accommodate the Best core. Plaintiffs seek to avoid this prior adaption by Best of the Challenger unit on the grounds that the core retainer in

this Best adaption is not a spindle although the core retainer was connected with the shorter spindle of the Challenger unit in such manner that the rotation of the core retainer would rotate the Challenger spindle. This distinction suggested by plaintiffs between a one piece spindle and the machine brass adaption of Best is not well taken, particularly in light of the plaintiffs' functional definition of a spindle and the multiple piece spindle asserted to exist in the accused device.

The evidence supports the defendants' independent expert, Professor Schultz, who testified that a mechanic, someone skilled with a file, could have made the modification (plaintiffs' Series X stainless steel lockset to accommodate the Best core).

■ The function of a patent should be to add to the sum of useful knowledge and not subtract from the former resources freely available to skilled artisans.[6]

■ For the foregoing reasons this Court holds that plaintiffs' Patent No. 3,190,091 is invalid.

Defendants also assert by their counterclaim the invalidity of patent "996". Defendants, as in the case of the "091" patent, introduced five prior art patents not referenced in the patent or the record of prosecution. Defendants placed particular emphasis on the Ellingson Patent, No. 1,755,434, but defendants and their expert admit that the Ellingson patent did not contain all the elements of the "996" patent; namely, an annular recess. Plaintiffs seek to avoid this prior art for the reason of the lack of an annular recess. In addition, plaintiffs, unlike the "091" patent, established significant sales of locksets practicing the "996" invention.

■ This Court therefore holds that the defendants did not overcome the presumption of validity of the "996" patent and that the patent is valid.

6. Great Atlantic & Pacific Tea Company v. Supermarket Equipment Corporation

(1950), 340 U.S. 147, 71 S.Ct. 127, 95 L. Ed. 162.

## INFRINGEMENT

As to the "091" patent, this Court having determined its invalidity, a question arises as to the necessity of passing on the defense of non-infringement. The practice of this Circuit has been, however, to give full consideration to both questions.

Since what we are talking about in the "091" patent is the placing of a shoulder on the spindle of a cylindrical lockset to retain an interchangeable core mechanism, the question of infringement is answered by the determination of whether the part referred to by the defendants as a knob sleeve in the accused device is in fact a spindle, as claimed by plaintiffs.

In the prosecution of this patent the applicant avoided a reference to a prior Best patent by suggesting that the core in the referenced patent was locked behind the face of the knob or an arcuate shoulder and that the core and knob acted as a unit or subassembly and not a spindle. Likewise, the arcuate shoulder of the accused device is part of the knob assembly being fixedly attached to the knob and having no connection to the spindle except through the lock-bar. Defendants' expert, Professor Schultz, testified that this knob sleeve was part of the knob assembly. Plaintiff Russell further conceded that if the stainless steel knob was machined from solid brass stock, this knob sleeve would not be a spindle.

Plaintiff's contention that this knob sleeve is the part of a multiple spindle is an unacceptable construction of the claims; if the plaintiffs' functional definition of a spindle were carried to a logical conclusion, it would include the knob shank, the knob, the knob face, the core and key, since torque is transferred on all of these to retract the lock bolt.

This Court therefore finds that the accused device does not infringe the "091" patent.

As to the "996" patent this Court holds that, although both devices accomplish a means for locking, the structures are substantially dissimilar. The accused device differs from the claims of the "996" patent, as reviewed above, as follows:

The mounting rose assembly of the accused device, using ball bearings and a bearing race, does not have a bearing aperture therethrough, nor does it have an annular recess. The Ellingson patent cited by the defendants as pertinent prior art was distinguished on the same grounds by the plaintiffs. Since the mounting rose assembly does not have an annular recess, it would not have a lock slot extending axially from the recess. Neither does the accused device contain a spindle having a non-rotatable connection with the operating assembly. The connection is non-rotatable in the unlocked position but is rotatable in the locked position. The lock-bar in the accused device is not nonrotatable and does not have an axially rotatable and movable mounting on the spindle but is mounted upon the knob sleeve.

These differences, in the Court's opinion, are not merely colorable but are material; and, since a claim of a patent is not infringed unless each material element is present, the second device does not infringe the claims of the plaintiffs' "996" patent. Jogger Manufacturing Corporation v. Roquemore, 118 F. 2d 867 (7th Cir. 1941).

This is not an "exceptional case" justifying an award of attorney's fees under 35 U.S.C. § 285.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of this action and the counterclaims by virtue of the Patent Laws of the United States and the Judicial Code.

2. Letters Patent No. 3,190,-091 are not entitled to any presumption of validity because the most pertinent prior art was not considered by the Patent Office during the prosecution of the application therefor.

382

■ 3. Since no evidence was offered to show a date of conception or the date of reduction to practice of the invention claimed in Letters Patent No. 3,190,091 prior to May 27, 1963, its filing date, the date of invention is deemed to be May 27, 1963.

4. Letters Patent No. 3,190,091 are invalid and void for each of the following reasons:

(a) the difference between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the lock art.

(b) the alleged invention described in the patent was known or used by others in this country before the invention thereof by the applicants for patent.

5. Letters Patent No. 3,190,091 are not infringed by defendants' 6K7A9 lock set.

6. Letters Patent No. 3,048,996 are entitled to a presumption of validity; and the defendants having failed to overcome said presumption, the Patent No. 3,048,996 is declared valid.

7. Since no evidence was offered to show a date of conception or a date of reduction to practice of the invention claimed in Letters Patent No. 3,048,996 prior to September 19, 1960, its filing date, the date of invention is deemed to be September 19, 1960.

8. Letters Patent No. 3,048,996 are not infringed by defendants' 6K7A9 lock set, however.

9. Defendants are entitled to judgment declaring that Letters Patent No. 3,190,091 are invalid and void.

10. Defendants are not entitled to recover from plaintiff reasonable attorneys' fees incurred in the defense of this action and prosecution of the counterclaim.

11. That the complaint be dismissed.

12. Defendants are awarded their costs and disbursements with costs against plaintiffs.