The **GARRETT CORPORATION**, Plaintiff-Appellant-Cross-Appellee,

v.

**AMERICAN SAFETY FLIGHT SYSTEMS, INC.**, Defendant-Appellee-Cross-Appellant.

No. 73–2476.

United States Court of Appeals, Fifth Circuit.

Oct. 10, 1974.

**10**

Robert S. Swecker, Washington, D. C., Karl V. Hart, Miami, Fla., for plaintiff-appellant-cross-appellee.

Woodrow M. Melvin, Jr., Miami, Fla., Guy P. Smith, Los Angeles, Cal., for defendant-appellee-cross-appellant.

Before RIVES, GEWIN and RONEY, Circuit Judges.

RIVES, Circuit Judge:

This patent infringement suit involves inflatable escape slides intended primarily for use in evacuating passengers from aircraft under emergency conditions. The Garrett Corporation (Garrett) filed a complaint against American Safety Flight Systems, Inc. (American Safety) seeking an injunction and damages for infringement of U.S. Patents numbered 2,765,131 and 3,102,623. American Safety counterclaimed for a declaratory judgment of invalidity and noninfringement of the Garrett patents. American Safety also contended that this is an "exceptional case" under 35 U.S.C. § 285 and sought an award of attorneys' fees. The district court concluded that both patents are invalid and also not infringed, but denied the award of attorneys' fees to American Safety. We affirm as to invalidity of the patents and hence do not reach the issue of infringement.[1]

1. In Beckman Instruments, Inc. v. Chemtronics, Inc., 5 Cir. 1970, 439 F.2d 1369, 1372 n. 4, this Court said: "We find that when a challenge is made to the validity of a patent in an infringement suit, that issue should ordinarily be taken up first and in-

## I

On October 2, 1956, the United States Patent Office issued a patent numbered 2,765,131 to James F. Boyle, the owner of Garrett's predecessor, Air Cruiser's Company. This patent, entitled "Inflatable Escape Chute Assembly," involves a slide intended for use to aid the escape of persons from a grounded aircraft. The objects of the patent are (1) to provide a chute which can be compactly stowed and carried in an aircraft, (2) to overcome the disadvantages associated with the use of hand-held fabric sheets, and (3) to provide an inflatable chute with means for distending its stiffening elements even under low temperature conditions, which preclude the use of carbon dioxide as the distending medium.

The Boyle patent discloses an inflatable structure comprised of a large, middle, closed-end, flexible, inflatable fabric tube and, longitudinally seamed to it and in communication with its interior through holes, a pair of cross-sectionally smaller, stiffening, slideway-defining side tubes. The patent teaches that these tubes when inflated properly are fluid-trussed beams with high resistance to bending strains. The lower end portion of each side tube is of diminishing cross-section and curves back under itself in such a way as to provide for stability of ground contact when the slide is in use. A fabric girt, a girt bar, and brace lines are utilized to secure the upper end of the slide assembly to the airplane or other structure. An aspirator-type inflation device is mounted in the large middle tube at its upper end, and a hose connects the aspirator to a bottle of compressed air. The complete chute assembly, deflated and rolled or folded, is carried in a container. In an emergency, the girt bar is secured, the slide is allowed to unfold, and the inflation system is activated. As compressed air inflates the tubes, the slide quickly unfolds. Persons may then slide to the ground on the external surface of the large middle tube.[2]

On September 3, 1963, the United States Patent Office issued a patent numbered 3,102,623 to Kenneth N. Schacht and Frank S. Panetta, assignors to Garrett. The Schacht-Panetta patent relates to an escape device which Gar-

---

fringement considered only if validity is decided favorably to the patentee." In the present case, holdings of invalidity are of course limited to the pertinent claims.

2. The first four of the nine claims of the Boyle patent are in issue in this case:

"1. An escape-chute assembly comprising an elongated, flexible-walled, fluid-distensible slide-way structure having separable wall elements defining a fluid retaining chamber between them and externally presenting a slide-way surface for supporting contact with an escaping person sliding by gravity thereon, means for holding one end of the same at a position in the air that is at a substantial distance above the earth's surface, and means for effecting fluid-distension of said structure, the walls of the said chamber and the fluid therein constituting a fluid-trussed beam of sufficient strength against bending to support against gravity the weight of an escaping person sliding upon it while the lower end of the chute is supported at such height in relation to the holding of

its upper end that the chute has a safely moderate slope for escape of the person by free gravity sliding of the escaping person upon it.

"2. An assembly as defined in claim 1 in which the defined structure comprises a plurality of parallel flexible tubes extending lengthwise of the chute and surface bonded to one another for augmenting the resistance of the structure to bending strain when it is inflated.

"3. An assembly as defined in claim 2 in which a plurality of the tubes extend lengthwise of the chute and define, when inflated, a trough-shaped slide-way.

"4. An assembly as defined in claim 1 in which the lower end of a fluid-retaining flexible wall of the defined structure is curved about a horizontal transverse axis and thus has a rocker-shaped, downwardly-facing, supporting surface, for like supporting contact of the curved part of the said wall with the earth's surface when the slide-way structure is at different inclinations in relation to earth's surface."
Exh. Vol. I, p. 258.

rett characterizes as "an improvement on the Boyle invention."[3]

The patent discloses a slide having a strip of material, such as canvas, forming a slideway surface and two inflatable fabric side tubes secured on the strip of material to form a trough-shaped slide. The slide is supported on two inflatable beams which are held parallel by inflatable top and bottom spacer tubes. According to the specifications, when the supporting structure is inflated, the strip of material is drawn taut to form a "laterally flat and quite rigid slideway surface." The specifications further state, "Thus the slide-way surface is formed with no sag and, except for a slight bending which may occur due to the weight of a person or cargo sliding on it, forms a smooth surface for the person or cargo." The entire slide structure is attached to the aircraft or other structure, and is inflated, in a manner similar to the Boyle slide.[4]

## II

American Safety urged and continues to urge that the patents are invalid in light of the prior art at the time of the inventions. Particular emphasis is placed upon certain prior art not presented to or considered by the patent office. This attack weakens the presumption of validity which normally attaches to a patent, and requires a court "to scrutinize the patent more closely." Beckman Instruments, Inc. v. Chemtronics, Inc., 5 Cir. 1970, 439 F.2d 1369.[5]

After a seven-day trial, the district court asked both parties to prepare and submit proposed findings of fact and conclusions of law. The district court then made 63 findings of fact, and con-

---

3. The patent indicates that, (1) "When a wide slide-way surface is required, the middle tube [on a Boyle slide] must be made very large. A large chute of this type is difficult to handle and stow." By contrast, the width of the Schacht-Panetta slide "may be varied without changing the size of the beams in the supporting structure and may, for psychological or physical reasons, be made as wide, or wider than, the exit door of the aircraft." (2) "Since the slide-way surface in the chute shown in the Boyle patent is formed on the surface of the middle tube, it is therefore rounded. This convex surface does not lend stability to a person or to freight sliding on the escape chute." As indicated by the specifications and the drawings, the slide-way surface of the Schacht-Panetta slide is "laterally flat." Exh. Vol. I, p. 260.

4. The wording of the first part of each of the three claims of the Schacht-Panetta patent is identical, viz:

"A slide for a structure comprising: a longitudinally extending elongated strip of material; an inflatable supporting structure having a pair of spaced inflatable structural beams arranged to support said strip of material therealong and adapted to hold said strip of material taut to form a laterally flat slide-way surface when said supporting structure is inflated;"

and the latter part of each of the claims reads as follows:

Claim 1:

"longitudinally extending side rails associated with said structural beams and arranged contiguous the longitudinal edges of said strip of material; and means for attaching one end of the slide to the structure at a distance from a supporting surface."

Claim 2:

"longitudinally extending inflatable side rail tubes disposed contiguous the longitudinal edges of said strip of material and communicating with said structural beams; and means for attaching one end of the slide to the structure at a distance from a supporting surface."

Claim 3:

"inflatable means associated with said supporting structure and arranged to hold said structural beams in substantially parallel realtionship when said supporting structure is inflated; longitudinally extending inflatable side rail tubes disposed contiguous the longitudinal edges of said strip of material and communicating with said structural beams; and means for attaching one end of the slide to the structure at a distance from a supporting surface."

Exh. Vol. I, p. 261.

5. See also Zero Mfg. Co. v. Mississippi Milk Ass'n, 5 Cir. 1966, 358 F.2d 853; Cornell v. Adams Engineering Co., 5 Cir. 1958, 258 F. 2d 874; Rosaire v. Baroid Sales Division, Nat'l Lead Co., 5 Cir. 1955, 218 F.2d 72.

cluded that the pertinent claims of both patents are *invalid and not infringed.*[6]

With regard to the Boyle patent, the district court found that Claim 1 was anticipated generally by the prior art, and anticipated specifically by noncited Carpenter U.S. Patent No. 200,694 (1878) and noncited Dixon U.S. Patent No. 2,191,374 (1940).[7] The district court also made a number of findings relating to obviousness,[8] and in summary concluded that,

> "At the time of the Boyle invention the differences between the subject matter invented and sought to be patented and the prior art were such that the subject matter as a whole would have then been obvious to a person having ordinary skill in the art to which the subject matter of the Boyle invention pertained."[9]

Adopting the narrow reading of Boyle urged by American Safety, the district court stated:

> "Each of Claims 1, 2, 3 and 4 of the Boyle patent is limited to an escape chute assembly in the use of which an evacuee slides upon the external surface of the inflated slideway structure and none of these claims may be read upon defendant's slide construction."[10]

In reaching its conclusion on this matter, the district court relied in part upon the file history of Boyle. According to the district court, in order to distinguish his device from a prior art reference, Boyle "limited his claims to so position an evacuee as to put an evacuee in sliding contact with the external surface of the inflated structure, as opposed to moving within or upon the internal surface of the structure or upon a member suspended from or within an inflated chute."[11] The district court further held that Garrett's interpretation of the Boyle claims was not consistent with "the plain meaning of the claims [and] the disclosure of the specifications."[12]

The district court found that the three claims of the Schacht-Panetta patent are invalid. The district court held that, "Each of the three claims of the Schacht patent reads directly upon, and is fully anticipated by, the disclosure of the noncited Hailstone patent No. 3,070,023."[13] The district court also indicated at several points in its opinion that the Schacht-Panetta patent was void for obviousness:

> "It was well within the skill of a person of ordinary skill in the art prior to the Schacht patent to em-

---

6. Garrett on this appeal intimates that this court should discount to some extent the district court's findings, because it "adopted substantially all of American Safety's proposed findings of fact." A comparison of the defendant's proposed findings and the district court's findings does reveal a good deal of similarity. However, it is clear that the district court did not simply adopt wholesale the defendant's proposed findings. The district court's organization of the facts differs substantially from that proposed by the defendant; the district court's findings are more brief, about 27 pages long as reproduced in the appendix as compared to 35 pages for the defendant's proposed findings; some of the district court's findings have no counterpart in the defendant's proposed findings; and there are a large number of textual differences between the district court's findings and the defendant's proposed findings.

7. Findings of Fact 13 and 14.

8. Findings of Fact 14 and 15.

9. Finding of Fact 22.

10. Finding of Fact 48.

11. Finding of Fact 51.

12. Finding of Fact 52. Also, in Garrett's Schacht-Panetta patent it is stated:

> "The inflatable escape chute shown in the aforementioned Boyle patent is formed of a large, inflatable middle tube and a pair of cross-sectional smaller side tubes, the three tubes being bonded together to form a trough-shaped chute. *The slide-way surface in the chute shown in the Boyle patent is formed on the middle tube* and its width is directly related to, and determined by the size of the middle tube.
>
> "Furthermore, *since the slide-way surface in the chute shown in the Boyle patent is formed on the surface of the middle tube . . . .*" (Emphasis added.)

Exh. Vol. I, p. 260.

13. Finding of Fact 33.

ploy·a slideway surface which would be slack, taut, or any combination thereof in a slideway construction, such as the combination of the Canadian and Heyniger patents proposed by the Patent Office Examiner." [14]

"As evidenced by the British, Canadian and Hailstone patents, supra, it was well within the ken of a person of ordinary skill in the art, prior to December, 1959, to devise an inflatable rectangular tube support structure for an aircraft evacuation slide in which the slideway was provided by a fabic [sic] sheet stretched upon or between the support tubes." [15]

### III

■ Our examination of the record convinces us that the district court did not err in its conclusions that the Boyle and the Schacht-Panetta patents are invalid as obvious.

#### A. *The Boyle Patent.*

Section 103 of Title 35 provides:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

The Supreme Court outlined in Graham v. John Deere Co., 1966, 383 U.S. 1, 17–18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545, the nature of the inquiry required under § 103:

"While the ultimate question of patent validity is one of law, A. & P. Tea Co. v. Supermarket Corp., *supra*, 340 U.S. [147] at 155, 71 S.Ct. [127] at 131 [95 L.Ed. 162 (1950)], the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy."

In Lear, Inc. v. Adkins, 1969, 395 U.S. 653, 676, 89 S.Ct. 1902, 23 L.Ed.2d 610, the Court referred to the test in *Graham* as a "demanding standard of invention." In Anderson's Black Rock v. Pavement Co., 1969, 396 U.S. 57, 62, 90 S.Ct. 305, 308, 24 L.Ed.2d 258, the Court reiterated the test enunciated in *Graham*, and emphasized that "'strict observance' of those requirements is necessary."

■ The district court's findings with regard to the "factual inquiries" demanded by *Graham* must be reviewed under the clearly erroneous standard of Rule 52(a), F.R.Civ.P.[16] The ultimate issue of obviousness is, however, a question of law, not of fact.[17] In reviewing the district court's findings of fact and conclusions of law, we shall discuss in

---

14. Finding of Fact 32.

15. Finding of Fact 35.

16. Stamicarbon, N.V. v. Escambia Chemical Corp., 5 Cir. 1970, 430 F.2d 920, 926, 928. Also see Metal Arts Co. v. Fuller Co., 5 Cir.

1968, 389 F.2d 319, 321; Flour City Architectural Met. v. Alpana Alum. Prod., Inc., 8 Cir. 1972, 454 F.2d 98, 106.

17. Swofford v. B & W, Inc., 5 Cir. 1968, 395 F.2d 362; Kiva Corporation v. Baker Oil Tools, Inc., 5 Cir. 1969, 412 F.2d 546, 552.

turn the various factors emphasized in *Graham*.

We examine first the scope of the prior art. The district court made the following finding:

> "At the time of the Boyle invention of the inflatable excape [sic] chute assembly the scope and content of the prior art, to which the subject matter of the Boyle invention pertained, was not confined to means for evacuation of passengers and cargo from the grounded aircraft, such as a rope ladder or a hand-held escape slide or to the patents disclosed by the applicant to, or independently found by the Patent Office Examiner.
>
> "The scope and content of such prior art then embraced inflatable tubes for sundry structures and assemblies, as well as chutes, slides and gangways for the descent, by gravity, of persons and property from a higher to a lower level." [18]

On this appeal, Garrett does not explicitly contest the district court's concept of the scope of the prior art. Garrett intimates, however, that the scope of the relevant prior art is more limited than indicated by the district court. Garrett states that "The subject matter of the Boyle patent is directed toward solving the specific problem of evacuating passengers from an aircraft as rapidly as possible," and that "the prior art did not disclose Boyle's solution to the problems of evacuating passengers from airplanes." [19]

Although Boyle may have had the specific problem of escape from aircraft in mind when he developed his slide, we agree with the district court that the scope of the prior art is not limited to devices specifically intended for use on airplanes. The problem of evacuating passengers from a grounded airplane does not differ in any fundamental way from the more general problem of devising a means to allow people or goods to move rapidly from a higher to a lower level. In both cases, an efficient and safe means of transportation is the ultimate objective. Also, to the extent that inflatable tubes were suggested for use in accomplishing this objective, one should consider on the issue of obviousness the prior art concerning inflatable tubes. The district court's finding on the scope of the relevant art is further supported by the actions of the patent office in not restricting its scrutiny to devices intended for use on airplanes,[20] and by the language of the patent itself stating that "it is also susceptible of being used in other situations calling for an emergency escape chute." [21]

Turning next to the content of the prior art, we note first the patents cited by the patent office in its proceedings prior to issuing a patent to Boyle. In the first office action, the examiner rejected the original Claim 1[22] as unpatentable over Benenato U.S. Patent No. 837,602 (1906) and Luisada Great Britain Patent No. 646,498 (1950). Benenato discloses a portable, flexible, reinforced tubular chute intended primarily for delivering or loading packages from a higher to a lower level. The patent indicates that the invention could also be used as a fire escape. Luisada discloses

---

18. Finding of Fact 17.

19. Appellant's Brief, at pp. 41 and 43.

20. *See* the discussion *infra* as to the content of the prior art considered by the patent office.

21. In a letter amending the original application, Boyle's attorney in explaining a change in title said, "The limitation of the title to aircraft is removed because the invention is applicable for replacement of permanently mounted and unsightly slide chutes such as are now sometimes seen on the outside of old-people's homes and other institutions." Letter received by patent office on January 13, 1955. Defendant's Exh. 10, p. 14ff.

22. When the Boyle application was originally filed, Claim 1 appeared as follows:
> "1. An escape-chute assembly comprising an elongated, flexible-walled, fluid-distensible slide-way structure, means for holding one end of the same at a position a substantial distance above the ground, and emergency means for fluid-distension of said structure."
Defendant's Exh. 10, p. 6.

an inflatable boat with a plurality of inflatable tubes. The examiner reasoned that "Benenato discloses an escape chute which in view of Luisada it would not require invention to inflate."[23] The examiner further stated:

> "Claims 2 and 3 are rejected as claim 1 and in view of Sumovski wherein the teaching is found of tubes united to resist bending strain. No invention can be seen in proposing to use this type of construction to make the chute of Benenato trough-like as suggested by Figure 1 of Luisada."

Sumovski U.S. Patent No. 511,472 (1893) relates to various inflatable structures in which a plurality of tubes are arranged in parallel and joined together for strength to resist bending.

In response to the examiner's initial rejection of his claims, Boyle submitted a number of amended claims.[24] This time, the examiner rejected Claims 1, 2 and 3 "as failing to distinguish patentably and structurally from Schon in view of Bingham."[25] Schon France Patent No. 433,093 (1911), according to the examiner, "shows an escape chute including a fluid-distensible double walled slide-way structure C, means E for holding one end above the ground on which the submarine rests, and bottles F of compressed air for effecting fluid distension of the structure." Bingham U. S. Patent No. 2,421,679 (1947) discloses an inflatable boat with a plurality of inflatable tubes.

In response to the second rejection, Boyle further amended Claim 1 to read as it does in the final patent[26] and the patent office then allowed Claims 1, 2 and 3.[27] The patents that were cited by

the examiner, but not applied specifically against Claims 1 to 4, were Seely U. S. Patent No. 1,205,033 (1916), which relates to an inflatable life raft designed to be carried in a deflated condition on ships; Hutchinson U.S. Patent No. 2,363,249 (1944), which shows an inflatable protector for parachutists; Manson U.S. Patent No. 2,389,160 (1945), which discloses an airplane troop launching chute, consisting of a rigid metal tube for use while the plane is in flight; and Triggs Great Britain Patent No. 608,672 (1948).

American Safety brought to the attention of the district court a number of prior patents not cited by the patent office examiner. As indicated in Part II of this opinion, the district court attached great importance to these patents, especially Carpenter U.S. Patent No. 200,694 (1878), Dixon U.S. Patent No. 2,191,374 (1940) and Tucker U.S. Patent No. 227,324 (1880). Carpenter discloses a portable fire escape device mounted on a wheeled platform. The patent teaches that an air pump may be used to inflate a long flexible tube. Stiffened by inflation, this tube can be raised to a window of a structure by a support cradle. A bar connected to the upper end of the tube may then be fitted against the inside of the window frame. The tube is then deflated and ropes are wound on a roller to support a covering which overlies the tube. Persons can slide from the window to the ground either between the tube and the covering, or on the exterior of the covering. Dixon discloses a collapsible pneumatic structure. This patent relates to an improved fabric outer cover for inflatable tubes for structures which may be erect-

---

23. Letter mailed August 6, 1954, Defendant's Exh. 10, p. 11.

24. In Claim 1, Boyle inserted after the words "fluid-distensible slide-way structure," the following words: "having separable wall elements defining a fluid retaining chamber between them." Also, "ground" was replaced by "earth's surface," "emergency" was deleted, and "effecting" was inserted before "fluid-distension of said structure."

See letter received by the patent office on January 7, 1955, Defendant's Exh. 10, p. 14.

25. Letter mailed September 2, 1955, Defendant's Exh. 10, p. 18.

26. See letter received February 8, 1956, Defendant's Exh. 10, p. 19.

27. See letter mailed March 7, 1956, Defendant's Exh. 10, p. 23. The patent office had earlier allowed Claim 4 as an integrated claim only.

ed or dismantled by inflation or deflation. The invention is said to be applicable to various light portable structures or articles where inflatable tubes can be substituted for wood or metal structures. Tucker discloses a fire escape which utilizes a pair of spaced, inflatable, fluid distensible support beams for the support of a fabric slide-way surface between the beams. Other patents cited by American Safety include Hood U.S. Patent No. 1,964,818 (1934), which discloses collapsible structures with inflatable tubular support members; Ford U.S. Patent No. 2,657,716 (1950); Phane U.S. Patent No. 2,698,020 (1951) and Mauney U.S. Patent No. 2,743,510 (1953), all of which show structures with slab-like inflatable members with internal ties for holding the walls close together; and Jahns German Patent No. 887,258 (1953) which relates to the use of inflatable rubber bodies as construction elements.

We next review the differences between the prior art and the claims at issue. The district court made the following finding:

"As the Patent Office Examiner found, during prosecution of the application before the Patent Office, Claims 1, 2 and 3 of the Boyle patent are directed to an old combination of elements. The applicant claimed novelty in one of the elements, the inflatable support structure, while keeping the other old elements in the old combination. The recited elements, i. e. 'means for holding one end of the (chute assembly) at a position in the air' and 'means for effecting fluid-distension of said structure' are old elements found in the prior art.

"Claims 1, 2 and 3 are invalid for claiming old elements in an old combination wherein the old elements perform no new function in the combination." [28]

As the district court indicates, Boyle seems to include the basic elements present in Carpenter—an inflatable tube including an outer covering over which people or goods may slide, means of inflation, and both means of attachment to a structure and means of stability on the ground. Moreover, Boyle, like Carpenter, is intended for use as an escape slide under emergency conditions.

Garrett in effect acknowledges the lack of any novel elements in the Boyle patent when it argues that "The Boyle invention is a novel combination of elements which may not be individually new, but which cooperate in a synergistic manner to solve the long-existing problem of providing a compact, self-erecting, self-supporting escape slide for aircraft." [29] Garrett at another point argues that Boyle brought together the elements "in a specific combination wherein the elements cooperated to solve the technical problems of the industry in a unique and efficient manner." [30]

Next, we must review the level of ordinary skill in the pertinent art. As noted in Blohm & Voss AG v. Prudential-Grace Lines, Inc., 4 Cir. 1973, 489 F.2d 231, 244, this issue is not explicitly resolved in *Graham* or in the many decisions which have followed. The Fourth Circuit in *Blohm & Voss AG* commented that,

"The matter seems to be one which does not otherwise easily lend itself to specific articulation. The matter also seems to be necessarily related to the inquiry of the scope and content of the prior art. The inventor who ventures into the art is presumed to know the prior art references. Judge Rich stated it picturesquely when he wrote that the inventor should be imagined as seated in his workshop 'with the prior art references—which he is presumed to know—hanging on the walls around him. . . .' Application of Winslow, 365 F.2d 1017, 1020, 53 CCPA 1574 (1966)." (489 F.2d 244)

In the present case, Garrett claims that the testimony of Dr. Barry G. King

28. Finding of Fact 23.

29. Appellant's Brief, p. 42.

30. Appellant's Brief, p. 43.

and Mack W. Eastburn is particularly relevant on the issue of the level of ordinary skill. Dr. King testified that in the early 1950's he was the Chairman of a Civil Aeronautics Administration-Civil Aeronautics Board Working Group concerned with evaluating emergency escape exits from airplanes and developing a regulation which would provide reasonable safety for airplane passengers. The district court noted that Dr. King was "essentially" "an observer of the use of safety devices." [31] Dr. King said his committee was "not concerned with the development of a device but rather with the availability of devices and developing specifications for devices that we believed might be satisfactory." [32] Dr. King testified that the types of equipment initially tested included the rope, a Jacob's ladder, a solid fixed ladder, and a hand-held canvas escape slide; that a number of types of ramps were tested; and that other types of escape devices would have been tested if he had known of their existence.[33] In 1955, Air Cruisers, Garrett's predecessor, gave a demonstration of an inflatable slide at Andrews Air Force Base. Dr. King testified that he was impressed by the relative advantages of this sort of escape device and that "after viewing it [the inflatable slide], it was a logical solution." [34]

Mack Eastburn, who is presently a safety officer for American Airlines, observed the demonstration at Andrews Air Force Base in 1955. He testified that he felt at the time that the inflatable slide was "a tremendous improvement in the evacuation devices which permitted a much faster egress rate and a reduction in the over-all time of evacuating a full plane load of passengers." [35]

Although Dr. King's testimony suggests that Boyle's idea was a good one, it does not lead inevitably to the conclusion that the level of ordinary skill in the pertinent art was at a level so low that the Boyle device constituted invention. As emphasized by the district court, Dr. King "lacked both engineering and technical background" and "never made any investigation of the state of the pertinent prior art." [36] Likewise, Eastburn was "neither an engineer, designer nor builder of escape devices, nor was he aware of the prior art relating to inflatable escape devices." [37] In addition, Dr. King stated that "You develop a functional specification, how a thing must perform, and then the engineers can do almost anything that you describe correctly"; the Air Cruisers' slide, he testified, "fulfilled the functional requirements." This suggests that it was not that the level of ordinary skill was low in the early 1950's, but

---

31. Finding of Fact 11.

32. Tr. p. 42, Vol. I of Rec. on Appeal.

33. Dr. King indicated that it was routine procedure to gather relevant information from the published literature, but that there was "no discussion of emergency escape other than the description of the certification tests for CAB." (Tr. 90.) Thus, Dr. King indicates that his gathering of information extended only to information regarding escape devices designed specifically for airplanes.

34. Garrett notes in its brief that Dr. King testified that he would not have thought of the Boyle device. While Dr. King did so testify, his remarks preceding this testimony indicate that he would not ordinarily attempt to think of a solution to a perceived problem.

    "In other words, we describe a human specification, how far a man could reach

at what level at what angle, and the engineer then takes this and uses this as a design parameter, and we know that we can describe the rate at which people can get through exits at various times. We give these data to engineers, but the solutions —two things.

    "The worst thing you can do is step out of your field and try to solve problems in another man's field where expertise exists, and this is one way not to get your safety work accomplished, and I don't feel any competence in this.

    "So I would, if you would say would I have thought of the solution, no."
    Tr. 121, Vol. I of Rec. on Appeal.

35. Tr. pp. 187–188.

36. Finding of Fact 11.

37. Finding of Fact 12.

that there was no real demand for a device with the qualities of the Boyle slide until the CAA–CAB study group established new and different functional requirements for airplane escape devices.

■ In evaluating obviousness, a court may take into account secondary considerations, such as commercial success, long felt but unsolved needs and failure of others. The district court found that, although Garrett had sold some slides manufactured under its Boyle patent, "there was insufficient evidence to persuade the court of its commercial success and the Court finds that there was none." [38] On its appeal, Garrett claims that Boyle's inflatable slides and slides embodying the Boyle concept have achieved complete acceptance and are now the only escape devices which meet the present government regulations for emergency evacuation of passengers from airplanes. This argument seems to assume that certain allegedly successful slides, or perhaps all slides, come within the claims of the Boyle patent and thus demonstrate the commercial success of Boyle. Actually, whether these successful slides are covered by Boyle is an ultimate issue in the case. Garrett also claims that the Boyle patent solved the major problems of the hand-held slide. While inflatable slides clearly do solve many of the problems asso-

ciated with earlier airplane escape devices, the evidence is not altogether clear as to whether inflatable slides satisfied a "long felt" need. There is also no direct evidence on whether others had tried but failed to discover a device satisfying the functional requirements established by the CAA–CAB study group.

After examining the underlying facts, as set forth above, we conclude that the Boyle slide does not satisfy the statutory test of nonobviousness. In Graham v. John Deere Co., 1966, 383 U.S. 1, 36, 86 S.Ct. 684, 703, 15 L.Ed.2d 545, the Supreme Court indicated that obviousness must be tested in the light of the prior art, whether or not that art was in fact known to those actually working in the field at the time of the alleged invention:

"It is also irrelevant that no one apparently chose to avail himself of knowledge stored in the Patent Office and readily available by the simple expedient of conducting a patent search —a prudent and nowadays common preliminary to well organized research. . . . To us, the limited claims of the Scoggin patent are clearly evident from the prior art as it stood at the time of the invention." [39]

We agree with the district court that the claims of the Boyle patent must be considered obvious in the light of the

---

38. Finding of Fact 19.

39. Also see Walker v. General Motors Corporation, 9 Cir. 1966, 362 F.2d 56, 60 n. 3 ("Walker was charged with knowledge of all that the prior art disclosed at the time of his alleged invention, irrespective of whether persons of ordinary skill in the field, or he himself, or anyone else, actually possessed such all-encompassing familiarity with prior disclosures . . . . This is so because the Constitution does 'not authorize the issuance of patents whose effects are to remove existent knowledge from the public domain, or to restrict free access to materials already available.' Graham v. John Deere Co., 383 U.S. 1, 6, 86 S.Ct. 684, 688 [15 L.Ed.2d 545] (1966)."). David & David, Inc. v. Myerson, 2 Cir. 1968, 388 F.2d 292, 294 ("The general test is an objective one, as the patent holder must be deemed to possess

all the available knowledge in the applicable art"); Formal Fashions, Inc. v. Braiman Bows, Inc., 2 Cir. 1966, 369 F.2d 536, 538 ("a hypothetical mechanic who, among other things, has the prior art in mind when he endeavors to solve the problem for which the patent is obtained"); Blohm & Voss AG v. Prudential Grace Lines, 4 Cir. 1973, 489 F.2d 231, 243; Application of Winslow, 365 F.2d 1017, 1020, 53 CCPA 1574, 1966; Novelart Manufacturing Co. v. Carlin Container Corp., D.N.J.1973, 363 F.Supp. 58, 72 and n. 16; Norris Industries, Inc. v. Best Universal Lock Co., S.D.Ind.1968, 296 F.Supp. 372, 379 ("An inventor is charged with knowledge of all that the prior art, taken as a whole, discloses with respect to the subject matter of the invention, and a person skilled in the art is further presumed to have had at his disposal all relevant prior art constructions and patents").

prior art, especially the noncited prior art. It is apparently true that neither Carpenter nor any other prior art escape device or escape apparatus explicitly teaches that a person may slide to safety from a higher to a lower level on the covered external surface of an inflated tube. However, as the district court indicated, it would not require invention to see that the covered inflatable tube in the Carpenter fire escape could be used while inflated, if the tube were able to support a person. In light of the available art concerning inflatable tubes, it was obvious that inflatable tubes existed, or could be constructed, which would support the weight of persons or cargo. Finally, it would be evident that a non-inflated inflatable escape apparatus could be folded up and stored in a relatively compact manner when not in use.

Garrett urges the applicability of the doctrine of synergism with regard to Claim 1, citing Sterner Lighting, Inc. v. Allied Electrical Supply, Inc., 5 Cir. 1970, 431 F.2d 539, 543. However, the basic elements of an inflatable tube with slide surface, means of inflation, and means of attachment, cooperate in substantially the same manner in both Boyle and Carpenter. Thus, if synergism exists, it was also present in Carpenter; and its presence in Boyle, even if somewhat heightened, is not invention.

Claims 2 and 3, which augment and incorporate Claim 1, require parallel flexible tubes extending lengthwise. These tubes, described as side rails, are intended to increase bending resistance and to define a trough-shaped slideway. The file history indicates that both the Patent Office and Boyle believed that these claims depended upon the patenta-bility of Claim 1,[40] and we think this view was correct. Adding inflatable side rails to an otherwise unpatentable Claim 1 would not constitute invention in light of the prior art relating to inflatable tubes. Therefore, these claims fall with Claim 1. Claim 4, described in the patent office proceedings as an "integrated claim," and which also incorporates and depends upon Claim 1, also falls with Claim 1.

### B. The Schacht-Panetta Patent.

Turning to the Schacht-Panetta patent, we review the district court's findings and conclusions in the same manner utilized in analyzing the Boyle patent. We begin with an examination of the scope and content of the prior art. The Patent Office in its proceedings considered Heyniger U.S. Patent No. 2,936,056 (1960) and a Canadian patent, Quilter No. 580,453 (1959). Heyniger discloses a modification of Boyle wherein the lower end of the inflatable large middle support tube is extensible to permit the length of the slide to be increased, if desired. Quilter discloses an inflatable escape slide composed of a pair of spaced longitudinally extending cigar-shaped inflatable tubes joined at the top and bottom by inflatable cross-tubes. The tubes thus form a rectangular configuration. A noninflatable piece of material is suspended upon this tube structure "so that when the chute is inflated, the material sags between the side tubes and forms a chute there-between." [41]

American Safety brought to the attention of the district court a number of patents not cited by the patent office examiner. Elliott British Patent No. 805,696 (1959) is the British counterpart to Quilter. In Hailstone U.S.

---

40. In a letter mailed September 2, 1955, the Patent Office rejected Claims 1, 2 and 3 "as failing to distinguish patentably and structurally from Schon in view of Bingham." As discussed earlier, Schon discloses an escape device for use on submarines and Bingham discloses an inflatable boat with a plurality of inflatable tubes. In a document dated February 13, 1956, Boyle's attorney amended Claim 1 and remarked that "The above amendment of parent Claim 1 is believed to make it and also appendant Claims 2 and 3 clearly allowable." In a letter mailed March 7, 1956, the Patent Office allowed the claims.

41. Quilter patent, Defendant's Exh. 5.

Patent No. 3,070,208 (1962), as the district court found,

> "the non-inflated fabric slideway is suspended between a pair of parallel, spaced inflatable longitudinally extended beams of a rectangular tube support structure. The slideway is laterally flat and taut in the upper and lower portions of the slide, there to promote the fast descent of an evacuee, and 'sags slightly' in the middle portion there to slow the evacuee's descent." [42]

The district court further found that "the Hailstone patent specifically teaches the provision for laterally flat and taut slideway portions, which the cited Canadian patent did not specifically state." [43] Other patents cited by American Safety include Marx U.S. Patent No. 71,030 (1867), which discloses a tubular fabric fire escape chute somewhat similar to the hand-held fabric chute previously used to evacuate passengers from aircraft; Campbell U.S. Patent No. 864,408 (1907) which relates to a coal chute having a flexible canvas floor; and Schackle U.S. Patent No. 1,406,765 (1922), which discloses a child's playground slide. American Safety also cited Tucker and Carpenter, which are discussed above with regard to Boyle.

The differences between the prior art and Schacht-Panetta were developed during the patent office proceedings. Initially, the examiner rejected all claims as unpatentable over Heyniger. The examiner "considered that the above reference [Heyniger] fulfills the structural and functional requirements as broadly set forth by applicant's claims." [44] New claims were substituted for those rejected, but these too were rejected as being "unpatentable over Quil-

ter cited in view of Heyniger of record." [45] These rejected claims were later resubmitted with two amendments. First, the words "laterally flat" were added in front of "slideway surface." Second, with regard to where the side rails were located, the words "the longitudinal edges of" were added so that the reference to side rails read, "side rails . . . arranged contiguous the longitudinal edge of said strip of material." When the claims as amended were resubmitted, the attorney for the applicant stated,

> "The slide in the subject application distinguishes structurally from the escape chute shown in the Quilter reference. The slide disclosed in the subject application includes a strip of material 16 that is drawn taut to form a laterally flat and quite rigid slideway surface when the beams 20 are inflated and side tubes 18 are secured contiguous the longitudinal edges of the strip of material 16 so that the strip of material and the side tubes form a trough-shaped slideway. Adding side rails on the Quilter structure, as suggested in the Office Action, would not produce the slide shown in the subject application.
>
> "It has been found that the sag in the material at the bottom of a chute of the type shown in the Quilter reference slows up and makes more difficult the exit of passengers from the slide. The subject slide is an improvement over the Quilter chute in that the laterally flat slideway surface formed by the material 16 permits a fast exit of passengers from the bottom of the slide." [46]

The Patent Office subsequently allowed the three claims which appear in the Schacht-Panetta patent.[47]

---

42. Finding of Fact 34.

43. Finding of Fact 33.

44. Letter mailed November 10, 1960, Defendant's Exh. 13, p. 20.

45. Letter mailed February 6, 1962, Defendant's Exh. 13, p. 28. The examiner further

stated, "It would be a matter of choice to add the side rails shown by Heyniger to Quilter's structure."

46. Letter received August 3, 1962, Defendant's Exh. 13, p. 30.

47. Letter mailed August 23, 1962, Defendant's Exh. 13, p. 33.

In its brief on this appeal, Garrett discusses the changes made in an effort to get a patent, and states,

"Thus, the record is clear in showing that the Patent Office Examiner considered the term 'laterally flat' as applied to the strip of slide material to be a sufficient definition of the difference between the Schacht-Panetta slide and the Quilter escape chute." [48]

At another point in its brief, Garrett makes a statement of similar import regarding the difference between the prior art and the Schacht-Panetta slide: "Claims 1, 2 and 3 of the Schacht-Panetta patent are specifically limited to the fact that the spaced inflatable tubes support the strip of material in a taut condition for [sic] form a laterally flat slideway surface when the beam tubes are inflated."[49]

■ Assuming that a slide of the sort disclosed by the Schacht-Panetta patent could be constructed and would be useful,[50] we conclude that the patent is invalid as obvious. The only real point of difference between Schacht-Panetta and the prior art appears to be in the tautness of the slide surface. We agree with the district court's conclusion that, "It was well within the skill of a person of ordinary skill in the art prior to the Schacht patent to employ a slideway sur-

face which would be slack, taut, or any combination thereof in a slideway construction." [51] Moreover, the relative advantages and disadvantages of tautness as opposed to slackness, such as changing the speed of descent and increasing the danger of a "trampoline effect," are evident, so that utilizing a taut slideway surface could hardly be considered inventive.

## IV.

■ Section 285 of Title 35 relates to attorneys' fees in patent cases. It provides that "The court in exceptional cases may award reasonable attorney fees to the prevailing party." In Graham v. Jeoffroy Mfg., 5 Cir. 1958, 253 F.2d 72, 78, Judge Tuttle stated that, "The law placing, as it does, the discretion in the trial court to determine . . . whether the case is an exceptional one so that attorneys' fees should be allowed, appellate courts ought not to and will not interfere with the exercise of such discretion. Indeed they may not do so unless there is such a clear abuse as to show that discretion was not exercised, or unless it is plain that the trial court's decision is based on an erroneous concept of law." [52]

In the present case, the district court made the following findings of fact with

48. Appellant's Brief, p. 62.

49. Appellant's Brief, p. 57.

50. The district court made the following findings of fact: .

"26. Though the purported point of novelty taught by this invention was that the slideway material should be drawn 'taut to form a laterally flat and quite rigid slideway surface,' the application failed to disclose to a person of ordinary skill in the art how to achieve and/or maintain this allegedly desirable result.

"A slide structure made to the above-quoted specification would be potentially dangerous, if a person were to jump thereon from an airplane doorway, because of the unavoidable catapult or trampoline effect.

"In practice, the procedure is to apply the slideway fabric, which is a resilient plastic material, rather than canvas as stated in the patent disclosure, to the sup-

port tube when the latter is in an only slightly inflated condition.

"27. The slide demonstrated by the plaintiff to the Court did not conform to the above-quoted specification. To the contrary, when the slide, so demonstrated was inflated and used, the slideway surface was somewhat loose, rather than taut, and sagged noticeably between the support tubes, rather than presenting 'a laterally flat and quite rigid slideway surface.'

"28. Garrett failed to prove that it has manufactured any slides like that disclosed in the Schacht patent." (Appendix p. 306.)

51. Finding of Fact 32.

52. Also see Specmade Products, Inc. v. Barnett, 5 Cir. 1966, 354 F.2d 229, 230; Henry Hanger & Display Fixture Corp. v. Sel-O-Rak Corp., 5 Cir. 1959, 270 F.2d 635, 644. Cf. Seismograph Service Corp. v. Offshore Raydist, 5 Cir. 1959, 263 F.2d 5, 21, 24, 28.

regard to American Safety's claim for attorneys' fees:

"Though less than careful, Garrett acted with candor in the proceedings before the Patent Office.

"Garrett brought and maintained this action against American on the Boyle patent in good faith.

"Garrett brought and maintained this action against American on the Schacht patent in good faith." [53]

The court consequently concluded that "This action is not an 'exceptional case' within the meaning of 35 U.S.C. 285 and American will not be awarded attorneys' fees." [54]

We conclude that the district court did not abuse its discretion. Although we have ruled that the Boyle patent is invalid, we think Garrett had an arguable claim that Boyle was a valid patent which covered the defendant's slides. Furthermore, the district court found that Garrett proceeded in good faith in this proceeding, and we are not convinced to the contrary. Under these circumstances, American Safety is not entitled to attorneys' fees.

Affirmed.

53. Findings of Fact 61, 62 and 63.   54. Conclusion of Law 11.