Kenneth WHITE, Plaintiff-Appellant,

v.

MAR–BEL, INC., and Mr. Dan Marshlack, Defendants-Appellees.

No. 74–1101.

United States Court of Appeals, Fifth Circuit.

March 6, 1975.

Rehearing and Rehearing En Banc Denied April 21, 1975.

---

Irwin C. Alter, Howard B. Rockman, Chicago, Ill., Harold R. Ainsworth, New Orleans, La., Marvin E. Barkin, Tampa, Fla., for plaintiff-appellant.

Stefan M. Stein, Tampa, Fla., for defendants-appellees.

Before BROWN, Chief Judge, and COLEMAN and DYER, Circuit Judges.

DYER, Circuit Judge:

White brought this suit for infringement of United States Patent No. 3,496,-812, issued February 24, 1970, for a "Plastic Cutting Device and Method." The defendants, Mar-Bel, Inc., a Florida corporation, and Marshlack, its majority stockholder, denied infringement and validity.

The district court submitted five special interrogatories to the jury which found that the patent was valid, that defendants' infringement was wanton and willful, and that the court should

treble the damages in entering judgment. White moved for entry of judgment in accordance with the verdict, including treble damages, attorney's fees and injunctive relief against future infringement. Defendants moved for a judgment notwithstanding the verdict or, alternatively, for a new trial. Although the district court found that there was substantial competent evidence to support the jury's finding of infringement, novelty and utility, it granted a judgment NOV on the ground that the patent was invalid as a matter of law by reason of obviousness within the meaning of 35 U.S.C.A. § 103. Pursuant to Rule 50(c) Fed.R.Civ.P., the court conditionally denied defendants' alternative motion for a new trial, declined, in the exercise of its discretion, to award treble damages, and found that this was not an exceptional case justifying an award of attorney's fees under 35 U.S.C.A. § 285.

White appeals from the judgment of invalidity and from the conditional denial of treble damages. We reverse the judgment of invalidity, and affirm in all other respects.

Since we are confronted with the narrow issue of nonobviousness, and the subsidiary question of treble damages, a detailed explication of the background development of plastic laminate material, and of the development of the White-Meyer (White) invention and its infringement by the defendants is capsulated.[1]

Plastic laminate is a very rigid, hard, durable sheet of plastic which cannot be scratched and which has a long wearability. Typical of this material is the commonly known brand name "Formica." Plastic is very brittle, and if cut by shearing, its molecules do not stretch but break, and thus the material cracks or fractures, leaving rough edges. Until White's invention, no device or method was known which would cut a piece of rigid plastic laminate material and leave a smooth edge. The carbide-tipped saw blades and steel-tipped routers used were expensive and had to be frequently sharpened or replaced. They invariably left a rough, cracked or chipped edge on the plastic which required masking by stainless steel turned molding or edge-banding techniques.

White and Meyer started manufacturing kitchen cabinets in 1951. In 1959, their corporation, White-Meyer Wood Products, Inc. produced plastic laminated kitchen cabinets with edge banding on the doors. To make the cabinets more cost competitive, they set about experimenting to produce a better cutter, and finally hit upon the machine and method now the subject of this suit.

There is no dispute concerning the claims of the patent alleged to have been infringed (claims 1, 2, 3, 6, 10 and 11).[2] The plastic cutting device claims of the White patent (claims 1–9) are directed to a support for a plastic sheet, and a pair of rotating cutters through which the plastic sheet is passed. One of the cutters is a single rotating disc with a smooth periphery, and the other cutter is a pair of spaced-apart rotating discs between which a portion of the single disc extends. The distance between the pair of discs is maintained slightly greater than the thickness of the single disc by a spacer, thereby forming a die (instead of a shear). The single disc is interleaved between the pair of discs, and is rotated in one direction while the pair of discs is rotated in an opposite direction. The process claims of the White patent (claims 10–12) describe a process for severing a sheet of rigid plastic material by passing the plastic through a die formed between a pair of rotating cutters, whereby the die deforms the plastic to the degree where severance occurs.

The critical feature of White's patent is the formation of a die rather than a shear, whereby the plastic is deformed as it passes between the cutters leaving a

---

1. The patent was originally issued jointly to White and Meyer. It is now solely owned by White.

2. We substantially adopt the abbreviated description of the apparatus and process claims as set forth in White's brief.

smooth edge which requires no sanding or deburring. Because the discs do not touch, no heat or friction is created, and the discs far outlast a saw or router blades. There are no teeth to wear out, and the discs rarely need sharpening, thus maintenance and operating costs are materially reduced.

It was undisputed that the difference between a die and a shear is that in a die movement there must be clearances between the male and female components in order to perform. In a shear action the components must touch in order to perform. White's patent describes a die to be formed between the cutter discs.

■ Novelty and utility having been found by the jury upon substantial competent evidence, the single question, with respect to validity, is whether the device was non-obvious in light of the prior art. Ag Pro, Inc. v. Sakraida, 5 Cir. 1973, 474 F.2d 167. That obviousness is a question of law cannot be doubted, but it must rest on factual underpinning. As Judge Ainsworth has succinctly put it:

> While the ultimate question of obviousness is one of law, Graham v. John Deere Company of Kansas City, [383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545] supra; Garrett Corporation v. American Safety Flight Systems, Inc., 5 Cir., 1974, 502 F.2d 9, this issue nevertheless lends itself to the following basic factual inquiries: (1) the scope and content of the prior art, (2) the difference between the prior art and the claims at issue, and (3) the level of ordinary skill in the art.

Gaddis v. Calgon Corporation, 5 Cir. 1975, 506 F.2d 880 at 884. The scope and content of the prior art considered by the court and jury included a pair of scissors, a pair of tin snips, the Hood, Fore and Sabel patents, introduced by the defendants, and the White file wrapper patents, including the Booth patent, plus the testimony of the parties and witnesses, including expert opinions.

The Booth patent, cited by the Patent Office, discloses a sheet metal cutting device with a single rotary cutting disc interleaved between a pair of flat-edged, rotating discs, which are pressed against and held in contact with the single disc. This relationship of discs forms a shear as distinguished from the die formation in White to cut plastic material.

Hood discloses a plurality of interleaved flat-edged discs, each upper disc being in contact with a pair of lower discs to create a shearing action on any substance passed between the discs, and used, for instance, to cut foil such as gold for dental material.

Fore discloses a rotating sharp-edged cutting disc interleaved between a pair of flat-edged portions of a grooved cutting disc, the upper disc being in contact with the grooved disc and used for cutting leather into strips.

Sable discloses a slitting and cutoff mechanism for sheet material and is admittedly of relatively less value than Hood and Fore.

The district court properly instructed the jury with respect to making a finding of the relative closeness of the Booth file history patent and the Hood and Fore patents. We think it was implicit in the verdict of validity that the jury found Hood and Fore were no closer to White than the file history Booth patent. Equally implicit in the verdict of validity is a finding that the difference between prior art and the claims at issue are the teachings in the former of the use of *shear* devices for cutting metal, foil, leather and paper, contrasted with White's invention of a *die deformation* apparatus or process for cutting plastic and leaving a smooth edge. While the legal conclusion on patent validity may be reviewed, under the *John Deere* guidelines,

> [i]f the ultimate issue of validity depends on subsidiary fact questions, it is the court's duty to instruct the jury that it should return one verdict if the facts are found one way and a different verdict if the facts are found otherwise. In such event, as in other cases tried to a jury, the reviewing court will presume that the disputed

matters of fact have been resolved favorably to the prevailing party in accordance with the trial judge's instructions. (Footnotes omitted). Panther Pumps & Equipment Co., Inc. v. Hydrocraft, Inc., 7 Cir. 1972, 468 F.2d 225, 228.

As we have seen, the Patent Office issued the White patent over the reference to Booth. Hood and Fore were not considered by the Patent Office, but the jury found they were no closer to White than Booth. In this context the patent is presumed valid and the burden of establishing invalidity rests upon the party asserting it. 35 U.S.C.A. § 282. Of course, the presumption of validity is weakened upon a showing of pertinent prior art not considered by the Patent Office. *Gaddis, supra;* Beckman Instruments, Inc. v. Chemtronics, Inc., 5 Cir. 1970, 428 F.2d 555, 557, cert. denied, 400 U.S. 956, 91 S.Ct. 354, 27 L.Ed.2d 264. But one who assails the validity of a patent bears a heavy burden of persuasion. Hobbs v. United States Atomic Energy Commission, 5 Cir. 1971, 451 F.2d 849, 864. And where, as here, "it is shown that the patent office considered prior art as close to the patented invention as any suggested to the court, the court should be extremely reluctant to substitute its opinion for the expertise of the patent office." Ingersoll-Rand Co. v. Brunner & Lay, Inc., 5 Cir. 1973, 474 F.2d 491, 496, cert. denied, 414 U.S. 865, 94 S.Ct. 125, 38 L.Ed.2d 117.

It would be inutile to repeat all that we have already said concerning the inability to cut a smooth edge in plastic laminate until White's invention of a device and method of cutting by a die deformation. The non-obviousness of the invention is bolstered also by the fact that one skilled in the art would not have searched for a solution to the problem in the direction White took. Defendants' expert unequivocally stated that he would try to get the blades as close as possible—without any intervening space—to successfully cut plastic laminate. In other words he, as one skilled in the art, would have been discouraged to search for the die concept conceived by White. This is supportive of non-obviousness. United States v. Adams, 1966, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572; *Brunner & Lay, Inc., supra,* 474 F.2d at 497. Moreover, the defendants advertised that their infringing apparatus was "A New Breakthrough in Laminate Plastic Cutting." We agree with the defendants' description of their device and attach significance to the fact that they considered "the design patent possessed of elements that were not 'obvious at the time the invention was made to a person having ordinary skill in the art.'" Sel-O-Rak Corp. v. Henry Hanger & Display Fix. Corp., 5 Cir. 1956, 232 F.2d 176, 178.

Finally, like the district court, we take cognizance "of the Plaintiff's largely unrebutted and persuasive evidence that his machine was commercially successful in filling a previously unmet need among cabinetmakers and others who use laminated plastic in their manufacturing processes," bearing in mind that this is only a secondary consideration. Waldon, Inc. v. Alexander Manufacturing Company, 5 Cir. 1970, 423 F.2d 91.

The crux of the district court's conclusion of obviousness is two-fold, *i. e.* that the difference between a die and shear is insignificant, and that if a distinction is necessary to show patentable invention in relation to the prior art there would necessarily be lack of infringement since the defendants' machine is constructed with touching discs which function as a shear. We disagree on both issues. The jury found that the difference between the prior art metal, leather, and paper shears, tin snips, and scissors, and White's die deformation plastic cutting invention is significant, and the invention amounts to a non-obvious improvement. Our independent consideration of the record, as we have pointed out, supports that finding. There is substantial evidence with respect to the context of the prior art, the difference between the prior art and the

White invention, and the level of the ordinary skill in the art, Graham v. John Deere Co., 1966, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, to support the legal conclusion that White's invention is a non-obvious improvement over the prior art. Furthermore, defendants contended throughout the trial that infringement was avoided because a die is different from a shear. They urged that, contrary to the die deformation in White's machine, the discs touch each other in defendants' machine which produces a shear. There is a conflict in the evidence whether the discs in defendants' machine are constructed to act as a die or a shear. The jury resolved this factual issue by finding that defendants willfully and wantonly infringed White's patent. The district court affirmed the finding of infringement and we think properly so.

■ We find that the patent is valid and was infringed. With regard to the conditional rulings of the district court as to treble damages and attorney's fees, the jury's finding that defendants willfully infringed and therefore that the compensatory damages should be trebled is advisory only. 35 U.S.C.A. § 284; 8 Walker on Patents, § 757 (Deller's 2d Ed. 1973). We are unpersuaded that the district court abused its discretion in declining to award treble damages. We also agree that this is not an "exceptional case" justifying an award of attorney's fees under 35 U.S.C.A. § 285. Williamson-Dickie Mfg. Co. v. Hortex, Inc., 5 Cir. 1974, 504 F.2d 983, 988; Garrett Corporation v. American Safety Flight Systems, Inc., 1974, 502 F.2d 9, 22.

■ Finally, we find no error in the denial of defendants' alternative motion for a new trial. The district court's comment, seized upon by the defendants, that the weight of evidence is to the effect that defendants' machine functions as a shear, even if supported by the record (which it is not), is insufficient to overturn the jury's verdict by granting a new trial. The jury's verdict must be against the great weight of the evidence before a new trial may be granted.

Price v. Mosler, 5 Cir. 1973, 483 F.2d 275; Cities Service Oil Company v. Launey, 5 Cir. 1968, 403 F.2d 537.

■ We find without arguable merit the contentions made by the defendants that White's commercial device should not have been admitted over objection; that the damages assessed by the jury were excessive; and that there is insufficient evidence to support the jury's verdict that defendant Marshlack should be held individually liable for infringement. The White commercial machine was relevant to show how the patented device operated and to demonstrate the essential features of the claims of the patent. Evidence of infringement was offered by reading the claims of White's patent on the accused device, not by comparing plaintiff's machine to defendants' machine.

■ Bearing in mind that "damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer" is the standard provided in 35 U.S.C.A. § 284 for ascertaining damages, the jury's award of $94,500 compensatory damages is fully justified on the basis of the evidence adduced to show the detriment suffered by White. Bros Inc. v. W. E. Grace Mfg. Co., 5 Cir. 1963, 320 F.2d 594; Livesay Window Company v. Livesay Industries, 5 Cir. 1958, 251 F.2d 469.

■ Marshlack's argument that he acted only as president of Mar-Bel and then only with advice of counsel has a hollow ring. He was the incorporator, president, majority stockholder, and moving force which resulted in the manufacture of the accused device. He participated in the development and promotion of the sale of his machine which was marketed soon after White's machine was exhibited in 1968. Two years elapsed between notification of infringement and defense counsel's reply challenging the validity of the patent. In our view, there was substantial evidence upon which the jury could find Marshlack liable for inducing Mar-Bel's infringement. 35 U.S.C.A. § 271(b). Rex

Chainbelt, Inc. v. General Kinematics Corporation, 7 Cir. 1966, 363 F.2d 336; Fromberg, Inc. v. Thornhill, 5 Cir., 1963, 315 F.2d 407; *Cf. Gaddis, supra,* 506 F.2d 880; General Electric Co. v. Sciaky Bros., Inc., 6 Cir. 1969, 415 F.2d 1068.

Affirmed in part, reversed in part and remanded for the entry of judgment for the plaintiff in the amount of the compensatory damages assessed by the jury in the amount of $94,500 plus taxable costs and injunctive relief prohibiting future infringement.